MCGREGOR W. SCOTT
United States Attorney
ANDRE M. ESPINOSA
KEVIN C. KHASIGIAN
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:19-CV-00247-JAM-DB |
| Plaintiff, | STIPULATION AND ORDER BETWEEN THE UNITED STATES AND CHAPTER 7 BANKRUPTCY TRUSTEES |
| v. | |
| REAL PROPERTY LOCATED AT 725 MAIN STREET, MARTINEZ, CALIFORNIA, CONTRA COSTA COUNTY, APN: 373-192-007-4, INCLUDING ALL APPURTENANCES AND IMPROVEMENTS THERETO, et al., | |
| Defendants. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:19-CV-00636-JAM-DB |
| Plaintiff, | STIPULATION AND ORDER BETWEEN THE UNITED STATES AND CHAPTER 7 BANKRUPTCY TRUSTEES |
| v. | |
| REAL PROPERTY LOCATED AT 5383 STONEHURST DRIVE, MARTINEZ, CALIFORNIA CONTRA COSTA COUNTY, APN: 367-230-018-7, INCLUDING ALL APPURTENANCES AND IMPROVEMENTS THERETO, et al., | |
| Defendants. | |

The United States of America and the Chapter 7 Bankruptcy Trustees, identified more specifically below, by and through their respective counsel, hereby agree and stipulate as follows:

1

## I. BACKGROUND

1. On December 18, 2018, pursuant to a criminal investigation that remains ongoing, law enforcement agents executed a federal search warrant at 4901 Park Road in Benicia, California, the business location for DC Solar, a solar equipment company with its principal place of business in the Eastern District of California. That day and on the days that followed, law enforcement agents also executed hundreds of federal seizure warrants to restrain bank accounts, vehicles, and personal property purchased by DC Solar's principals, Jeff and Paulette Carpoff (the "Carpoffs"), using proceeds of the fraud under investigation.

2. On or about January 30, 2019, DC Solar and several related entities filed for Chapter 11 bankruptcy in U.S. Bankruptcy Court in Reno, Nevada, in the master case captioned: *In re Double Jump Inc.*, Case 19-bk-50102 (the "Double Jump Bankruptcy"). The debtors are comprised of ten entities, including DC Solar's parent company, Double Jump, Inc., a Nevada corporation since 2018,[1] its three business divisions, DC Solar Distribution, DC Solar Solutions, and DC Solar Freedom,[2] businesses headquartered in Benicia, California (collectively, the "DC Solar Entities"), and six California LLCs, holding title to real estate purchased by the Carpoffs using fraud proceeds: Dora Dog Properties, LLC, Dog Blue Properties, LLC, Brandy Boy Properties, LLC, Park Road, LLC, and 475 Channel Road, LLC, and 140 Mason Circle, LLC (collectively, the "California LLCs") (the DC Solar Entities and the California LLCs are referred to in various locations herein as the "Debtors").[3]

3. As part of its Debtor-In-Possession ("DIP") first-day bankruptcy motions, DC Solar's counsel in the Double Jump Bankruptcy sought approval for a financing pact with a Beverly Hills lender that pledged to loan up to tens of millions of dollars to DC Solar in return for secured interests in certain real property. The California LLCs owned the real properties DC Solar sought to use as

---

[1] *In re Double Jump, Inc.*, Case No. 19-bk-50102, the "Master Case."

[2] *In re DC Solar Solutions, Inc.*, Case No. 19-bk-50130; *In re DC Solar Distributions, Inc.*, Case No. 19-bk-50131; and *In re DC Solar Freedom, Inc.*, Case No. 19-bk-50135.

[3] *In re Dora Dog Properties, LLC*, Case No. 19-bk-50103, *In re Dog Blue Properties, LLC*, Case No. 19-bk-50104, *In re Brandy Boy Properties, LLC*, Case No. 19-bk-50105, *In re 475 Channel Road, LLC*, Case No. 19-bk-50106, *In re Park Road, LLC*, Case No. 19-bk-50108, and *In re 140 Mason Circle, LLC*, Case No. 19-bk-50109.

1

collateral for its DIP financing proposal, and that property was subject to forfeiture based on its connection to the fraud perpetrated through DC Solar.

4. Before the Chapter 11 bankruptcy filings, the U.S. Attorney's Office for the Eastern District of California ("USAO-EDCA") informed DC Solar's counsel that at least forty-one properties owned by the Carpoffs and/or their alter ego entities were purchased with fraud proceeds and subject to forfeiture as part of its investigation. Nevertheless, DC Solar filed for bankruptcy and sought to encumber at least ten of those properties, which the USAO-EDCA had identified as having been purchased with fraud proceeds and subject to forfeiture.

5. On February 8, 2019, in the Eastern District of California, the United States filed an *in rem* forfeiture action against twenty-five properties connected to the fraud perpetrated through DC Solar and subject to the Debtor's DIP financing proposal in the matter captioned: *United States v. Real Property Located at 725 Main Street, et al.*, Case 19-CV-00247-JAM ("Forfeiture I"). The United States also sought to forfeit six California limited liability companies in the Forfeiture I action. As explained herein, the Carpoffs formed, owned, and managed the California LLCs, which held title to those twenty-five properties, and the Carpoffs kept records and managed certain business related to the California LLCs from the physical premises where they operated the DC Solar entities.

6. On February 8, 2019, the Bankruptcy Court heard oral argument on the Debtor's first-day bankruptcy motions, including a motion to approve the DIP financing proposal to support the DC Solar Entities' continued operations by encumbering certain of the Forfeiture I *In Rem* Defendants. The United States opposed the Debtor's motion based on the filing of the Forfeiture I action, and the Bankruptcy Court denied the motion.

7. On or about March 22, 2019, the Bankruptcy Court entered an order converting the Double Jump Bankruptcy from a Chapter 11 case into a Chapter 7 proceeding and appointing separate trustees for the California LLCs (the "California LLC Trustee") and for the DC Solar Entities (the "DC Solar Trustee") (collectively, the "Chapter 7 Trustees").

8. Thereafter, the California LLC Trustee moved the Bankruptcy Court for an order authorizing the Trustee to take over management and control of certain properties, including properties the USAO-EDCA had identified among the forty-one properties purchased with proceeds from the

2

from the fraud perpetrated through DC Solar.  The California LLC Trustee noted he did not seek immediate control over the twenty-five properties subject to the Forfeiture I action and would wait "until the forfeiture action is resolved or by mutual agreement of the parties."

9.  On April 15, 2019, in the Eastern District of California, the United States filed a second *in rem* forfeiture action, captioned: *United States v. Real Property Located at 5383 Stonehurst Drive, et al.*, Case 19-CV-00636-JAM ("Forfeiture II"), against fourteen additional properties connected to the fraud perpetrated through DC Solar.  The United States also sought to forfeit six California limited liability companies in the Forfeiture II action.  The *In Rem* Defendants in Forfeiture II were owned by the Carpoffs personally and/or LLCs they formed and controlled, including certain of the California LLCs in the Double Jump Bankruptcy and additional LLCs that are not debtors in that bankruptcy.

10.  On or about May 2, 2019, the California LLC Trustee moved in the U.S. Bankruptcy Court in Reno, Nevada, to enforce the automatic stay provisions against the Forfeiture I and II actions in the U.S. District Court in the Eastern District of California, asserting certain claims over certain properties subject to those actions.

11.  On May 16, 2019, the Honorable John A. Mendez, of the U.S. District Court for the Eastern District of California, granted the United States' *ex parte* application, pursuant to 18 U.S.C. § 983(j)(1)(A), which sought various relief associated with the properties subject to the Forfeiture I and Forfeiture II actions.  Specifically, the District Court restrained and enjoined the sale, pledge, transfer or any other means of disposing, controlling, or encumbering the *In Rem* Defendants and any action by any person or entity that would allow or cause the *In Rem* Defendants to diminish in value, without the District Court's prior approval.  The order also appointed the United States Marshals Service ("USMS") to maintain and sell certain of the *In Rem* Defendants, pay any encumbrances or loans on those properties, and to return any net proceeds to the associated forfeiture case as substitute *res* for final adjudication by the District Court.

12.  Thereafter, the Carpoffs agreed to forfeit any and all interest in the real properties subject to forfeiture to the United States in the Forfeiture I and Forfeiture II actions, which the District Court ordered on January 31, 2020, in Forfeiture I, and February 12, 2020, in Forfeiture II.

13.  On November 12, 2019, the United States and the Chapter 7 Trustees filed a joint

3

motion in the District Court seeking approval of a Coordination Agreement between them, which resolved their respective claims to real property subject to the Forfeiture I or Forfeiture II actions, and certain additional properties formerly owned by the Carpoffs or entities they controlled but that were outside of the Forfeiture actions.

14. On November 22, 2019, the Carpoffs filed a statement of non-opposition to the proposed Coordination Agreement between the United States and the Chapter 7 Trustees.

15. On November 26, 2019, the District Court granted the joint motion by the United States and the Chapter 7 Trustees and approved the Coordination Agreement. The Court also ordered certain relief consistent with the parties' agreement.

16. On January 22, 2020, the Bankruptcy Court in Reno, Nevada, entered an order approving the Coordination Agreement between the United States and the Chapter 7 Trustees.

17. Between October 2019, and January 2020, four DC Solar officers, employees, and outside professionals pleaded guilty to federal crimes related to their roles with DC Solar. On January 24, 2020, Jeff and Paulette Carpoff pleaded guilty to federal fraud and money laundering crimes they committed in connection with their operation of the DC Solar entities and certain of the California LLCs. On July 28, 2020, a seventh conspirator pleaded guilty to his role in the fraud perpetrated through DC Solar. The criminal investigation remains ongoing.

## II. THE COORDINATION AGREEMENT'S LIMITED RECORD SHARING PROVISION, THE TRUSTEES' DOCUMENT REQUESTS, AND THE AGREEMENT OF THE PARTIES CONCERNING THOSE DOCUMENT REQUESTS.

18. The Coordination Agreement includes a narrow provision permitting the United States, at its discretion, to share with the Chapter 7 Trustees certain records related to the properties allocated between the parties in the Coordination Agreement (the "Limited Record Sharing Provision"). Specifically, that provision states:

> To the extent permitted by law and to the extent practicable in the judgment of representatives of the USAO-EDCA, the USAO-EDCA agrees to coordinate with the Chapter 7 Trustees to identify and to permit the Chapter 7 Trustees to copy such identified documents related to (i) the California LLCs, (ii) the real properties included in the Forfeiture I Trustee Property Allocation, (iii) the real properties included in the Forfeiture II Trustee Property Allocation, and (iv) the real properties included in Additional Property.

4

19. The Chapter 7 Trustees have requested that the United States share with them, pursuant to the Limited Record Sharing Provision, certain documents concerning the DC Solar Entities and the California LLCs, which the United States obtained during its criminal investigation. Those documents encompass various categories of corporate, business, and financial records relating to the operation and management of the DC Solar Entities and the California LLCs, including documents concerning their formation and governance, and the acquisition, improvement, and/or sale of any property held by those entities.

20. The parties have conferred about the Chapter 7 Trustees' request for documents and expressed conflicting views about whether certain of the documents sought by the Chapter 7 Trustees fell within the narrow scope of the Limited Record Sharing Provision. Specifically, the United States objected to the Chapter 7 Trustees' initial request because the United States contended that the request was overbroad and sought information plainly beyond the scope of the Limited Record Sharing Provision, including material subject to Rule 6(e) of the Federal Rules of Criminal Procedure. The Chapter 7 Trustees' disputed this contention. After additional discussion and negotiation, the United States and the Chapter 7 Trustees reached this agreement, which satisfies the interests of the Chapter 7 Trustees and preserves the United States' neutrality in any civil litigation that may exist or arise between the Chapter 7 Trustees and others, while also advancing the United States' duty to protect and preserve the confidentiality of documents collected during a criminal investigation from impermissible public exposure.

**A. The United States agrees to share with the Chapter 7 Trustees copies of documents seized from the DC Solar Entity headquarters, which also contain records concerning the California LLCs.**

21. As set forth above, on December 18, 2018, law enforcement agents executed a federal search warrant at the business headquarters for the DC Solar Entities, which location also functioned as the *de facto* headquarters of the California Property LLCs. Under authority of that warrant, the United States seized several hundred banker's boxes filled with business records concerning the DC Solar Entities and the California LLCs, as well as the DC Solar servers (collectively the "Seized Records"). None of the Seized Records were obtained through any process triggering application of Rule 6(e) of the Federal Rules of Criminal Procedure. Additionally, as discussed herein, the Seized Records are not

5

subject to any other policy, regulatory, or statutory limitation on their disclosure to the Chapter 7 Trustees.

22. The United States has converted the majority of the Seized Records into electronic format (the "Digital Portion of the Seized Records"). A minority of the boxes remain in paper form (the "Paper Portion of the Seized Records").

23. The United States and the Chapter 7 Trustees (the "Parties") agree and stipulate that to avoid the risk, uncertainty, expense, and delay of litigation to resolve whether the documents in the Seized Records fall within the scope of the Limited Record Sharing Provision, the Parties agree to the terms and conditions of this stipulation, which constitutes the exclusive and final agreement between the Parties concerning the scope of documents that may fall within the Limited Record Sharing Provision and which may be made available to the Chapter 7 Trustees by the United States under that provision.[4]

24. Accordingly, the parties AGREE and STIPULATE that:

    a. The Chapter 7 Trustees shall deliver to the United States one or more external storage drives capable of receiving and storing at least an aggregate volume of one terabyte of digital data (which volume capacity may be modified after further analysis by members of the USAO-EDCA Information Technology staff). The Chapter 7 Trustees agree to consult and work with members of the USAO-EDCA Information Technology staff to insure compatibility with USAO-EDCA electronic data management protocols.

    b. Within a reasonable time after the Chapter 7 Trustees deliver such external storage drives, the United States will initiate the process of copying a single set of the

---

[4] The United States acknowledges that, to the extent that the Chapter 7 Trustees stand in the shoes of the Debtors with respect to legal control of the DC Solar Entities and California LLCs, and to the extent that the Seized Records are the property of those entities being held as evidence in a criminal investigation, the Chapter 7 Trustees may have standing to request the return of, or copies of, the Seized Records, assuming they could meet the requirements of Rule 41(g) of the Federal Rules of Criminal Procedure. The United States does not concede that the Chapter 7 Trustees could meet that burden. In any event, this stipulation obviates any need to litigate that question to a resolution, and because this stipulation concerns documents over which the Chapter 7 Trustees may have a colorable claim, the privacy concerns that might otherwise weigh strongly in favor of non-disclosure are significantly diminished.

  Digital Portion of the Seized Records, including the DC Solar server, for production to the Chapter 7 Trustees.  However, the Parties acknowledge and agree that the transfer of such a significant volume of electronic data, may require at least as many as ten business days to complete, assuming no system complications or disruptions, such as interruptions based on emergent circumstances in other investigations or cases.  The United States agrees to exercise diligence and work earnestly to complete the data transfer without unreasonable delay.  The Chapter 7 Trustees acknowledge that this stipulation shall support no right of enforcement concerning the speed with which the data transfer is completed.

c. Once the data transfer is complete, the United States shall return the external storage drives containing the electronic copies of the Digital Portion of the Seized Records to whichever of the Chapter 7 Trustees shall elect to receive the data, receipt of which that Trustee will acknowledge in writing.

d. Separately, the United States shall make the Paper Portion of the Seized Records available to the Chapter 7 Trustees and/or their designees for inspection and copying under the specific terms set forth herein.  The Chapter 7 Trustees shall bear the cost of such copies and facilitate the production of those copies by whatever means the Chapter 7 Trustees decide.  Should the Chapter 7 Trustees engage a private, third-party vendor for this purpose, such vendor shall be subject to the security approval of the Federal Bureau of Investigation ("FBI"), which will oversee the copying of all documents in its custody.

e. The Parties agree that in no event shall the United States, including the USAO-EDCA, the FBI, the Internal Revenue Service-Criminal Investigation, or any other federal law enforcement or other agency be required to make or bear the cost of making copies for the Chapter 7 Trustees, beyond the costs associated with the copying of the Digital Portion of the Seized Records, as set forth in Paragraph 24(b) above.

f. Scheduling for access to the Paper Portion of the Seized Records shall be at the

7

discretion of the FBI, taking into account any security and personnel considerations that may be relevant to the FBI, in its sole and exclusive discretion.

g. The Parties acknowledge and agree that copying the Paper Portion of the Seized Records may require more than one day of access to those documents.  The FBI agrees to cooperate with the Chapter 7 Trustees to organize a reasonable schedule to permit access to the Paper Portion of the Seized Records, subject to all security and personnel considerations as may be relevant to the FBI in its sole and exclusive discretion.

h. The Parties acknowledge that the Seized Records may include a limited number of documents that may be personal in nature and may relate to private matters concerning the Carpoffs or other former employees of the DC Solar Entities, including potentially privileged documents.  The Parties also acknowledge that the DC Solar Trustee has waived the attorney-client privilege over communications concerning the DC Solar Entities, as least with respect to the United States' use of those communications in its ongoing criminal investigation and prosecution. Separately, the Carpoffs have joined in the DC Solar Trustee's waiver and have also waived the attorney-client privilege over communications concerning the California LLCs, to the extent they held such a continuing privilege after the appointment of the California LLC Trustee.  Thus, the Parties agree that the only documents over which a potential attorney-client privilege remains among the Seized Records are those relating to purely personal matters involving the subjects of those communications, which the Parties agree are likely to be rare, if found at all in the Seized Records.

i. The Chapter 7 Trustees agree that the propriety of any subsequent use by them of any personal, potentially privileged, or any other document among the Seized Records, for whatever purpose, shall not be a matter for litigation involving the United States.  Rather, the Chapter 7 Trustees agree to resolve disputes over the use of any such documents with the Carpoffs' counsel of record in the criminal and/or Double Jump Bankruptcy cases, or such other representative of such other individual

        to whom the Carpoffs' counsel may direct the Trustees.

j.  To the extent required by applicable law, the Chapter 7 Trustees shall separately establish a protocol to affirmatively screen and segregate any privileged documents they encounter in the Seized Records when they are encountered and identified in the Seized Records and, to the extent required by applicable law, present any such documents to the Carpoffs' counsel (or a representative of such other individual to whom the Chapter 7 Trustees may be directed) for review and resolution of any potential privilege or privacy claims related to any such documents.

k.  To the extent required by applicable law, the Chapter 7 Trustees shall keep confidential and not publicly disseminate any document from the Seized Records that are affirmatively determined to be of a privileged or purely personal nature and related to the Carpoffs or another former employee of the DC Solar Entities, unless permitted to do so by the privilege holder, the person asserting a privacy claim, or pursuant to any order of any court.

l.  In no event shall the United States, including the USAO-EDCA, the FBI, the Internal Revenue Service-Criminal Investigation, or any other federal law enforcement or other agency be required to review, resolve, or participate in the review or resolution of any privilege or privacy claim concerning any of the Seized Records the Chapter 7 Trustees may seek to use in any later proceeding.  The Chapter 7 Trustees agree that the responsibility for and duty to review and resolve any such claims shall be theirs alone, and the Chapter 7 Trustees shall not ask any court to order the participation of the United States, including the USAO-EDCA, the FBI, the Internal Revenue Service-Criminal Investigation, or any other federal law enforcement or other agency to review, resolve, or participate in the review or resolution of any privilege or privacy claim concerning or relating to any of the Seized Records the Chapter 7 Trustee may seek to use in any later proceeding.

m.  Finally, the Parties agree that the Seized Records constitute the totality of the documents to be shared by the United States with the Chapter 7 Trustees pursuant to

the Limited Record Sharing Provision. The Parties also agree that this stipulation shall constitute a written amendment to the Coordination Agreement, modifying the terms to preclude henceforth, any and all obligation of the United States to share any additional documents or records of any sort whatsoever with the Chapter 7 Trustees under the Limited Record Sharing Provision and permanently and completely extinguishing that provision from the Coordination Agreement upon the execution of this stipulation by the Parties.

25. This stipulation and all of its provisions and conditions are for the sole and exclusive benefit of the Parties to this stipulation. No person or entity not a party to this stipulation will have or acquire any rights or remedies under or by reason of this stipulation.

**IT IS SO STIPULATED.**

Dated: 10/19/2020

McGREGOR W. SCOTT
United States Attorney

By: /s/ *Andre M. Espinosa*
ANDRE M. ESPINOSA
KEVIN C. KHASIGIAN
Assistant U.S. Attorneys

Dated: 10/19/2020

Bankruptcy Estate of the California LLCs

By: /s/ *W. Donald Gieseke* (as authorized on 10/19/2020)
W. DONALD GIESEKE, Chapter 7 Trustee for the California LLC Bankruptcy Estates

Dated: 10/19/2020

Bankruptcy Estate of the DC Solar Entities

By: /s/ *Christine Lovato* (as authorized on 10/19/2020)
CHRISTINA LOVATO, Chapter 7 Trustee for the DC Solar Bankruptcy Estates

**FINDINGS AND ORDER**

Based upon the representations of the parties in their agreement and stipulation, the Court adopts and orders those terms in whole and as defined more precisely in Paragraphs 24a through 24m.

**IT IS SO ORDERED.**

DATED: October 22, 2020                    /s/ John A. Mendez
                                                          THE HONORABLE JOHN A. MENDEZ
                                                          UNITED STATES DISTRICT COURT JUDGE